**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**EUGENE HAMPTON** **PLAINTIFF**

**VS.** **4:19-CV-00810-BRW**

**WELLS FARGO BANK NA, *ET AL.*** **DEFENDANTS**

**ORDER**

Pending is Defendants' Motion to Dismiss (Doc. No. 42). Plaintiff filed a response and Defendant filed a reply.[1] For the reasons set out below, the motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND[2]

On July 31, 1991, Plaintiff executed a $19,400 Deed of Trust and Note for property in Little Rock, Arkansas. Eventually, the deed was assigned to Deutsche Bank National Trust Company, but "Wells Fargo was the mortgage servicer of the Deed of Trust Note."

On July 30, 2004, Plaintiff filed for Chapter 13 Bankruptcy. Thirteen days later, Deutsche Bank commenced a non-judicial foreclosure on the property. On November 2, 2004, "Deutsche Bank sold the Real Property at public auction . . . to itself for . . . $27,651.31."

In November 2005, the bankruptcy court entered an agreed-to order finding that Plaintiff owed Wells Fargo $20,601.53, which included "all pre-petition arrears, attorney fees, and costs."[3] In June 2008, the court entered an order stating that Plaintiff had paid Wells Fargo a

---

[1]Doc. No. 49, 62.

[2]Unless otherwise noted, the background is from Plaintiff's Second Amended Complaint (Doc. No. 38).

[3]Doc. No. 4 at p. 28.

total of $15,716.99 and that the remaining balance of $4,884.54 would be paid off through direct payments to Wells Fargo starting on August 1, 2008.

Plaintiff asserts that he completed payments on the balance of the amount owed to Defendants on or about February 2010, but Defendants "continued to demand monthly payments from [him,] allegedly for the payment of the mortgage debt . . . ." Plaintiff continued paying.

In January 2017, Plaintiff requested an accounting from Defendants. In February 2017, Plaintiff contacted Defendants and "stated that he needed to repair the foundation on the home and wanted to refinance to get the money to make the repairs needed to the home." Later that month, Defendants noted that Plaintiff had been non-responsive to their inquiries regarding whether he intended to repair or demolish the property. They noted that they could "not go onto the property because the loan [was] current and could not "change the condition of the property" because Plaintiff was not in default. On October 6, 2017, Plaintiff received an accounting of his payments, in response to a request he made.

In March 2018, the house was demolished because it was determined to be unsafe for human habitation. Apparently it had been in this condition since at least 2015.

On June 8, 2018, Defendants informed Plaintiff that he was entitled to a refund of $14,289.13. Plaintiff asserts that a spreadsheet provided by Defendants shows that he has paid $30,166.29 since the bankruptcy discharge. Plaintiff contends that, despite an "admission of overpayment," Defendants still claim that he "owes even more on the alleged mortgage debt."

Plaintiff asserts that Defendants knew or should have known that Plaintiff no longer owned the property (because of 2004 foreclosure sale), but they have "continued each month to demand payments from Mr. Hampton using the threat of foreclosure." Plaintiff continued to pay Defendants "until he was advised by legal counsel" to stop paying.

Plaintiff asserts causes of action for (1) conversion, (2) unjust enrichment, (3) fraud/constructive fraud, (4) punitive damages, (5) violations of the Arkansas Deceptive Trade Practices Act ("ADTPA"), (6) violations of the Arkansas Fair Debt Collection Practices Act ("AFDCPA"), and (7) violations of Real Estate Settlement and Procedures Act ("RESPA").

## II. MOTION TO DISMISS STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court "accept[s] as true all of the factual allegations contained in the complaint, and review[s] the complaint to determine whether its allegations show that the pleader is entitled to relief."[4] All reasonable inferences from the complaint must be drawn in favor of the nonmoving party.[5] A motion to dismiss should not be granted merely because the complaint "does not state with precision all elements that give rise to a legal basis for recovery."[6] A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[7] "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."[8] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

---

[4]*Schaaf v. Residential Funding Corp*., 517 F.3d 544, 549 (8th Cir. 2008).

[5]*Crumpley-Patterson v. Trinity Lutheran Hosp*., 388 F.3d 588, 590 (8th Cir. 2004).

[6]*Schmedding v. Tnemec Co. Inc.*, 187 F.3d 862, 864 (8th Cir. 1999).

[7]*Id.* (quoting Fed. R. Civ. P. 8(a)).

[8]*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (overruling language from *Conley v. Gibson,* 78 S. Ct. 99, 102 (1957), which stated, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[9]

## III. DISCUSSION

Once you peel away the lengthy narrative about Defendants' indecency,[10] Plaintiff's claim is simple: Defendants billed him for his mortgage after he allegedly paid in full, resulting in overpayment of the debt. When he asked for an accounting, Defendants drug their feet.

### A. Foreclosure Proceeding

The commencement of the non-judicial foreclosure proceeding and alleged eventual sale of the property were in violation of the automatic stay that began when Plaintiff filed for bankruptcy on July 30, 2004.[11] Accordingly, the "postpetition foreclosure sale of the debtors' home" that occurred in November 2004 without the approval of the bankruptcy court "is *void ab initio*."[12] Plaintiff's arguments that he "has not petitioned this Court for any relief from the foreclosure sale" and "Deutsche Bank wanted the Real Property all these years, it should be entitled to keep it" are unavailing. He ignores the applicable law by repeatedly asserting that he

---

[9] *Id.* at 1964-65 (citations omitted).

[10] See Doc. No. 37 (Defendants "with intent to deceive filed and caused to be filed a secured claim in Mr. Hampton's bankruptcy proceeding giving Wells Fargo as mortgage servicer for Deutsche Bank a higher priority creditor status (secured creditor vs. unsecured creditor) despite actual knowledge that Mr. Hampton did not own the Real Property." "Not even the filing of the instant lawsuit has dissuaded Defendants from engaging in its unlawful and oppressive actions. The salient question is how many other individuals have been bullied in this same way." "Defendants have perjured themselves in the Bankruptcy Proceedings and have repeatedly engaged in contemptuous actions in collecting, retaining, and attempting to collect monies not owed by Mr. Hampton.").

[11] *In re Vierkant*, 240 B.R. 317, 320 (B.A.P. 8th Cir. 1999) (quoting *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir. 1997) ("'The automatic stay is among the most basic of debtor protections under bankruptcy law.'").

[12] *In re Ausburn*, 524 B.R. 816, 817 (Bankr. E.D. Ark. 2015).

has not owned the property since November 2004 and has been harassed for payments since that time. Again, the law is clear: the foreclosure sale was *void ab initio*, which means Plaintiff was the owner of the property and owed Defendants under the mortgage (just how much he owed them is a separate issue).

**B. Conversion**

Plaintiff asserts a claim for conversion based on the fact that the November 2, 2004 foreclosure sale of the Real Property produced proceeds in excess of the amount owed on the mortgage debt" and Defendants failed to remit the "sums in excess of the mortgage debt as required by Arkansas law."[13] Again, the sale was *void ab initio*, and had no legal effect. Plaintiff alleges that Deutsche Bank sold the property "to itself," but reimbursing itself is something Deutsche Bank will have to figure out.

**C. Unjust Enrichment**

Plaintiff asserts that the "mortgage debt secured by the Real Property was fully satisfied on November 2, 2004," so any money received after that was unlawfully obtained. According to Plaintiff, "[t]he doctrine of unjust enrichment requires Deutsche Bank to return all sums received as payments after November 2, 2004."[14] Again, this claim fails based on the fact that the foreclosure sale was *void ab intitio* and Plaintiff owed a mortgage debt to Defendants.

In addition to saying the debt was fully paid in 2004, Plaintiff asserts that he completed payments on the balance of the amount owed to Wells Fargo on or about February 2010. Yet, he also claims that he "<u>believes</u> he paid the debt . . . in full on February 2010."[15] Which is it? It

---

[13]Doc. No. 37.

[14]*Id.*

[15]*Id.* (emphasis added).

appears that the terms of the original mortgage extended through 2021 and were not modified by the bankruptcy proceeding.[16] Plaintiff contends that "[b]ased on arithmetic, [he] would have completed paying the entire claim secured by the Home in February 2010."[17] Possibly, but does this arithmetic consider that interest and escrow are both part of the payments, which reduces the percentage going to the outstanding principal? Did Plaintiff make extra payments to the principal balance?

If Plaintiff is claiming that at some point after 2010 the debt should have been paid off, and any payments after that constitute unjust enrichment, that is not clearly stated under Count Two. Furthermore, it appears to be a conclusory statement unsupported by the documents Plaintiff provided. However, if he files an amended complaint, he can clear up this claim.

**D. Fraud / Constructive Fraud**

Plaintiff's fraud and constructive fraud claims are based on his argument that "after November 2, 2004, [Defendant] falsely represented" to him that he "was the title owner of the Real Property."[18] Again, Plaintiff <u>was</u> the owner of the property, so this claim fails.

**E. Punitive Damages**

In Count Four, Plaintiff asserts a claim for "Punitive Damages." However, in Arkansas, punitive damages are grounds for relief, not a separate cause of action.[19]

---

[16]Under 11 U.S.C. § 1322 (b)(2), a bankruptcy plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." Defendants' secured claims was just that – a claim secured only by a security interest in real property that was Plaintiff's principal residence.

[17]Doc. No. 50.

[18]*Id*.

[19]*Bergan v. Ocwen Fin. Corp.*, No. 2:18-CV-00102 BSM, 2018 WL 9986722, at *3 (E.D. Ark. Nov. 1, 2018) ("Punitive damages are not a separate cause of action in Arkansas, so Bergan's claim will be treated as a request for punitive damages on the surviving counts.").

**F. Arkansas Deceptive Trade Practice Act**

Plaintiff asserts that "Defendants' policies and practices with regard to attempting to collect a debt discharged in bankruptcy amounts to actions proscribed by Ark. Code Ann. § 4-88-107(a)" and a violation of the ADTPA.[20] However, Defendants have not attempted to "collect a debt discharged in bankruptcy." Plaintiff's Second Amended Complaint admits that he still owed money to Defendants after bankruptcy was discharged. To the extent that Defendants may have eventually collected more debt than was owed, Plaintiff has not sufficiently pled what actions they took that were "unconscionable, false, or deceptive" other than sending a bill on a mortgage that Defendant believed (based on documents provided by Plaintiff) did not mature until 2021.[21]

**G. Arkansas Fair Debt Collection Practices Act**

Plaintiff asserts that Defendants violated the AFDCPA by continuing to demand payment "despite knowledge that the purported debt was satisfied on November 2, 2004 . . . ." Again, Plaintiff's position is unsupported because the foreclosure sale was void. To the extent that this claim is based on mortgage-payment demands that occurred after the debt was allegedly paid off in 2010, the claim also must fail. Neither Defendant is a "debt collector" under the AFDCPA.[22]

---

[20]Doc. No. 37. The only subsection that might apply is "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade . . . ." Ark. Code Ann. 4-88-108(a)(10).

[21]Doc. No. 4 at p. 103.

[22]*Silberstein v. Fed. Nat'l Mortg. Association*, No. 5:16-CV-05331, 2017 WL 187165, at *2 (W.D. Ark. Jan. 17, 2017) ) ("Mortgage lenders and services have as their principal purposes originating and servicing mortgage loans, respectively, not collecting debt. And, to the extent that they regularly attempt to collect debt, they are typically collecting debt owed to themselves, not owed to another.").

**H. Real Estate Settlement and Procedures Act**

According to Plaintiff, he sent qualified written requests to Wells Fargo in January 2017; January 25, 2018; and November 14, 2018. Plaintiff alleges that Wells Fargo did not respond in a timely fashion as required by RESPA.[23] To state a RESPA claim, "a complaint must include both an allegation of 'actual damages' and a causal relationship between the RESPA violation and the damages."[24]

According to the Second Amended Complaint, in January 2017, Plaintiff "requested an account history from Wells Fargo" because he thought he might have overpaid on the outstanding mortgage balance. Additional communications occurred in 2018 and 2019.

Defendants assert that Plaintiff cannot assert a claim under 12 U.S.C. § 3500.21, and Plaintiff appears to have conceded the issue.[25] Plaintiff argues that his RESPA claims is based on 12 U.S.C. §§ 2605 (e)(1)(B) and (e)(2)(A)-(C).

Plaintiff asserts that Defendants' "failure to respond properly, directly resulted in the home being demolished and Plaintiff suffer[ed] damages both emotional and actual damages including but not limited to fee(s) assessed to his account, overpayment, loss of property, and decreased value."[26] I am dubious as to whether Plaintiff can establish that the alleged RESPA violations are the reason his house was demolished, since providing an accounting of payments to Plaintiff would not have revealed that the property was in jeopardy of being demolished. In

---

[23]Doc. No. 37.

[24]*Silberstein*, 2017 WL 187165, at *3.

[25]Doc. No. 50 ("It is disingenuous for Defendants to construe Mr. Hampton's Real Estate Settlement and Procedures Act claim as one arising under a regulatory code and that because Mr. Hampton cited the regulation inaccurately that his entire claim should be dismissed . . . . Importantly, Mr. Hampton's RESPA claim does not arise under a regulatory code.").

[26]Doc. No. 37.

fact, Plaintiff's Second Amended Complaint seems to support my position, since he asserts that he received an accounting in October 2017, yet the house was still demolished in March 2018.[27] Additionally, based on documents provided by Plaintiff, it appears that he knew the property was in disrepair and subject to demolition. It is the failure to make repairs that resulted in demolition, not Defendants' failure to timely respond. The same appears to be true for fees and penalties. Fees and penalties are the result of defaulting on the loan in 2017 (based on the documents he provided), rather than Defendants' failure to timely respond to a request.[28]

Plaintiff's conclusory allegations fail to set out exactly what fees, penalties, and overpayments were <u>caused</u> by any alleged, delayed response to a qualified written request.[29]

---

[27]See Doc. No. 37 at ¶¶ 30, 96.

[28]Doc. No. 4, at p. 104 ("A demand letter was sent December 18, 2018, and the pre-foreclosure letter . . . was sent in January 2018. The Arkansas letter was sent again on November 6, 2018. The loan was referred to foreclosure because of a delinquency in payments" from "November 2017 through October 2018.").

[29]*Yakowicz v. BAC Home Loans Servicing, LP*, No. CIV. 12-1180 DWF/LIB, 2013 WL 593902, at *6 (D. Minn. Feb. 15, 2013), aff'd, 550 F. App'x 350 (8th Cir. 2014) ("To the extent that Plaintiffs' Second Amended Complaint makes conclusory allegations related to damages, such as allegations that they were damaged by way of additional fees, negative effect on their credit, and the initiation of foreclosure, they fail to tie those damages to a RESPA violation."); *Brothers v. Bank of Am., N.A.*, No. 5:12-cv-3121-EJD, 2012 WL 4471590, at *3 (N.D. Cal. Sept. 26, 2012) (claim that Plaintiff was "damaged in the amount of ongoing penalties, fees and interest charged by Defendants" not sufficient to state a RESPA claim for failure to respond to QWR because "[t]hese damages do not flow from any lack of response to the QWR; to the contrary, these 'damages' are a result of Plaintiff's failure to make loan payments"); *Thepvongsa v. Reg'l Tr. Servs. Corp.*, 972 F. Supp. 2d 1221, 1229 (W.D. Wash. Sept. 25, 2013) ("Plaintiff has not identified actual damages suffered as a result of [servicer's] failure to respond adequately to the QWR" because "[t]he lack of information did not . . . result in the accrual of late fees or penalties that could have been avoided had defendants timely responded [because] plaintiff was already in default when the QWR was sent"); *Durland v. Fieldstone Mortgage Co.*, No. 10CV125, 2011 WL 805924 *3 (S.D. Cal. Mar. 1, 2011) (concluding that mere allegations of fees assessed, negative credit reporting, and emotional distress were insufficient to establish a causal link between the alleged RESPA violations and Plaintiff's claimed damages).

However, considering that this is a motion to dismiss, Plaintiff may amend his complaint to outline the claims more clearly.

**CONCLUSION**

For the reasons set out above, Defendants' Motion to Dismiss (Doc. No. 42) is GRANTED IN PART and DENIED IN PART. The causes of action for conversion, fraud/constrictive fraud, punitive damages, and violations of the AFDCPA are DISMISSED.

Plaintiff may file an amended complaint clearing up the allegations related to his claims for unjust enrichment, violations of the ADTPA, and RESPA. As for the RESPA claim, he also must be specific regarding causation and actual damages. The documents relied on to support his claims must be attached.

Without further leave of the Court, the amended complaint must be filed by 5 p.m., November 3, 2020.

IT IS SO ORDERED this 21st day of October, 2020.

Billy Roy Wilson
UNITED STATES DISTRICT JUDGE