**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**EUGENE HAMPTON**                                                                   **PLAINTIFF**

**VS.**                                        **4:19-CV-00810-BRW**

**WELLS FARGO BANK NA,** *ET AL.*                                      **DEFENDANTS**

<u>**ORDER**</u>

Pending is Defendants' Second Motion to Dismiss (Doc. No. 69)  Plaintiff responded.[1]

For the reasons set out below, the Motion to Dismiss is GRANTED and this case is

DISMISSED.  Plaintiff's Motion to File a Fourth Amended Complaint and request for a hearing

(Doc. No. 75) and Defendant's Motion for Leave to File Reply (Doc. No. 77) are DENIED.

**I.      BACKGROUND[2]**

On July 31, 1991, Plaintiff executed a $19,400 Deed of Trust and Note for property in

Little Rock, Arkansas.  Eventually, the deed was assigned to Deutsche Bank National Trust

Company, but "Wells Fargo was the mortgage servicer of the Deed of Trust Note."

On July 30, 2004, Plaintiff filed for Chapter 13 Bankruptcy.  Thirteen days later,

Deutsche Bank commenced a non-judicial foreclosure on the property.  On November 2, 2004,

"the trustee sold the Real Property at public auction at the Pulaski County Courthouse to

Deutsche Bank as the highest and best bidder for the sum of  $27,651.31."

In November 2005, the bankruptcy court entered an agreed-to order finding that Plaintiff

owed Wells Fargo $20,601.53, which included "all pre-petition arrears, attorney fees, and

---

[1]Doc. No. 73.

[2]Unless otherwise noted, the background is from Plaintiff's Third Amended Complaint
(Doc. No. 65).

costs."[3]  In June 2008, the court entered an order stating that Plaintiff had paid Wells Fargo a total of $15,716.99 and that the remaining balance of $4,884.54 would be paid off through direct payments to Wells Fargo starting on August 1, 2008.

Plaintiff alleges that "[l]ikely for the second time, on or about February 2010, the Deed of Trust Note was satisfied and Mr. Hampton was no longer obligated on this debt."  However, Defendants "continued to demand monthly payments from [him,] allegedly for the payment of the mortgage debt . . . ."  Plaintiff continued paying.

In 2015, the City of Little Rock ("COLR") began notifying Defendants that the property violated numerous city codes.  According to Plaintiff, he "did not receive this notice or any legal notices from the COLR regarding the property because Deutsche Bank owned" the property, not Plaintiff.  However, Plaintiff also alleges that the COLR also put a copy of the notice on the home, and the occupants of the home told him about the notice.  After that, Plaintiff contacted COLR about resolving the code violations.  Unable to get a home-improvement loan, Plaintiff started saving so he could make the repairs.

In January 2017, Plaintiff requested an accounting from Defendants.  In February 2017, Plaintiff contacted Defendants and "stated that he needed to repair the foundation on the home and wanted to refinance to get the money to make the repairs needed to the home."[4]  Later that month, Defendants noted that Plaintiff had been non-responsive to their inquiries regarding whether he intended to repair or demolish the property.  They also noted that they could "not go onto the property because the loan [was] current" and could not "change the condition of the

---

[3]Doc. No. 4 at p. 28.

[4]Doc. No. 37.

property" because Plaintiff was not in default.[5]  On October 6, 2017, Plaintiff received a "partial accounting" of his payments..

On January 25, 2018, Plaintiff, through counsel, requested a complete accounting regarding mortgage payments made between August 2008 and January 2018.

In March 2018, the house was demolished because the COLR found it to be unsafe for human habitation.  Apparently, it had been in this condition since at least 2015.

On June 8, 2018, Defendants informed Plaintiff that he was entitled to a refund of $14,289.13.  Plaintiff asserts that a spreadsheet provided by Defendants shows that he has paid $30,166.29 since the bankruptcy discharge.  Plaintiff contends that, despite a "written admission of [Plaintiff's] overpayments" Defendants continued to send payment demands.

On October 21, 2020, I partially granted Defendants' Motion to Dismiss.[6]  I found that the foreclosure sale was void *ab initio* and Plaintiff was the owner of the property, with a mortgage through Defendants.  Plaintiff's claims under the Arkansas Fair Debt Collection Practices Act,  fraud, punitive damages, and conversion were dismissed.  However, Plaintiff was permitted to clarify his claims under the Real Estate Settlement and Procedures Act, Arkansas Deceptive Trade Practice Act, and for unjust enrichment.

Plaintiff filed a Third Amended Complaint on November 3, 2020,[7] which included causes of action for unjust enrichment, violations of the Real Estate Settlement and Procedures Act, and violations of the Arkansas Deceptive Trade Practices Act.

---

[5]*Id.*

[6]Doc. No. 63.

[7]Doc. No. 65.

## II.     MOTION TO DISMISS STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court "accept[s] as true all of the factual allegations contained in the complaint, and review[s] the complaint to determine whether its allegations show that the pleader is entitled to relief."[8]  All reasonable inferences from the complaint must be drawn in favor of the nonmoving party.[9]  A motion to dismiss should not be granted merely because the complaint "does not state with precision all elements that give rise to a legal basis for recovery."[10]  A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[11]  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."[12]  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[13]

---

[8]*Schaaf v. Residential Funding Corp*., 517 F.3d 544, 549 (8th Cir. 2008).

[9]*Crumpley-Patterson v. Trinity Lutheran Hosp*., 388 F.3d 588, 590 (8th Cir. 2004).

[10]*Schmedding v. Tnemec Co. Inc.*, 187 F.3d 862, 864 (8th Cir. 1999).

[11]*Id.* (quoting Fed. R. Civ. P. 8(a)).

[12]*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (overruling language from *Conley v. Gibson,* 78 S. Ct. 99, 102 (1957), which stated, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

[13]*Id.* at 1964-65 (citations omitted).

## III.    DISCUSSION

As I stated in a previous order, once you peel away the lengthy narrative about Defendants' indecency,[14] Plaintiff's claim is simple: Defendants billed him for his mortgage after he allegedly paid in full, resulting in overpayment of the debt.  When he asked for an accounting, Defendants drug their feet.

### A.    Foreclosure Proceeding

Plaintiff's Third Amended Complaint continues to criticize the effects of the foreclosure proceeding.  That issue was resolved when I previously found that the November 2004 foreclosure sale was *void ab initio*, which means Plaintiff was the owner of the property and had a mortgage through Defendants (just how much he owed them was a separate issue).[15]  Plaintiff has cited no law to refute this finding.  His repeated arguments that he "had no legal right to the property and more importantly, no legal obligation to the property" and that Defendants owned the property since 2004 are contrary to law.[16]

### B.    Unjust Enrichment

Plaintiff asserts that the "mortgage debt secured by the Real Property was fully satisfied first on November 2, 2004 with the foreclosure sale of the Real Property that produced a surplus

---

[14]See Doc. No. 37 (Defendants "with intent to deceive filed and caused to be filed a secured claim in Mr. Hampton's bankruptcy proceeding giving Wells Fargo as mortgage servicer for Deutsche Bank a higher priority creditor status (secured creditor vs. unsecured creditor) despite actual knowledge that Mr. Hampton did not own the Real Property." "Not even the filing of the instant lawsuit has dissuaded Defendants from engaging in its unlawful and oppressive actions. The salient question is how many other individuals have been bullied in this same way." "Defendants have perjured themselves in the Bankruptcy Proceedings and have repeatedly engaged in contemptuous actions in collecting, retaining, and attempting to collect monies not owed by Mr. Hampton.").

[15]Doc. No. 63.

[16]Doc. No. 65.

in proceeds."[17]  Again, this claim is without merit, since the foreclosure sale was void *ab initio*.

Plaintiff's other claims regarding entitlement to money that Defendants allegedly paid

themselves is both logically and legally flawed.  Plaintiff's claims that "taxes and insurance

applied for the sole benefit of Deutsche Bank" and that he "had no escrow obligations for

property he did not own" is also incorrect.[18]  He owned the property, so the taxes and insurance

protected his interest.

Plaintiff also asserts that Defendants failed to "properly apply [his] payments to the

principal balance on the Deed of Trust" which resulted in an "inaccurate unpaid balance

amount."[19]  He contends that Defendants "have systematically charged him more interest that

rightfully owed" and are "holding [his] funs without right."[20]  Similar conclusory statements

were made included in the Second Amended Complaint, and I directed Plaintiff to clear up his

allegations.  Plaintiff's new complaint and attached documentation does nothing to advance this

argument.  Despite attaching over hundred pages of documentation to the Third Amended

Complaint, Plaintiff has provided nothing to support the above allegations.

Plaintiff's argument about mortgage-interest income tax deductions is also specious.

According to Plaintiff's Third Amended Complaint, the property was not used as Plaintiff's

residence after 2008, so it appears he would not even be eligible for an interest reduction post-

2008.[21]  Any possible tax deductions before 2008 are well beyond that statute of limitations.

---

[17]Doc. No. 65.

[18]*Id.*

[19]*Id.*

[20]*Id.*

[21]*Bronstein v. Comm'r*, 138 T.C. 382, 385 (2012) ("In general, a qualified residence is
defined as a taxpayer's principal residence and one other home that is used as a residence by the

Plaintiff either knew or should have known that Defendants had not sent him the forms with the information necessary to claim the deduction (assuming that's his allegation).

### C.      Real Estate Settlement and Procedures Act

According to Plaintiff, he sent qualified written requests to Wells Fargo in January 2017; January 25, 2018; and November 14, 2018.  Additional communications occurred in 2019. Plaintiff alleges that Wells Fargo did not respond in a timely fashion as required by RESPA.[22] Plaintiff argues that the claims are based on 12 U.S.C. §§ 2605 (e)(1)(B) and (e)(2)(A)-(C).

To state a RESPA claim, "a complaint must include both an allegation of 'actual damages' and a causal relationship between the RESPA violation and the damages."[23] Previously, I noted that Plaintiff's conclusory allegations fail to set out exactly what fees, penalties, and overpayments were <u>caused</u> by any alleged, delayed response to a qualified written request.[24]   The Third Amended Complaint does not clear up this issue.

---

taxpayer. Sec. 163(h)(4)(A)(i).").

[22]Doc. No. 37.

[23]*Silberstein*, 2017 WL 187165, at *3.

[24]*Yakowicz v. BAC Home Loans Servicing, LP*, No. CIV. 12-1180 DWF/LIB, 2013 WL 593902, at *6 (D. Minn. Feb. 15, 2013), aff'd, 550 F. App'x 350 (8th Cir. 2014) ("To the extent that Plaintiffs' Second Amended Complaint makes conclusory allegations related to damages, such as allegations that they were damaged by way of additional fees, negative effect on their credit, and the initiation of foreclosure, they fail to tie those damages to a RESPA violation."); *Brothers v. Bank of Am., N.A.*, No. 5:12-cv-3121-EJD, 2012 WL 4471590, at *3 (N.D. Cal. Sept. 26, 2012) (claim that Plaintiff was "damaged in the amount of ongoing penalties, fees and interest charged by Defendants" not sufficient to state a RESPA claim for failure to respond to QWR because "[t]hese damages do not flow from any lack of response to the QWR; to the contrary, these 'damages' are a result of Plaintiff's failure to make loan payments"); *Thepvongsa v. Reg'l Tr. Servs. Corp.*, 972 F. Supp. 2d 1221, 1229 (W.D. Wash. Sept. 25, 2013) ("Plaintiff has not identified actual damages suffered as a result of [servicer's] failure to respond adequately to the QWR" because "[t]he lack of information did not . . . result in the accrual of late fees or penalties that could have been avoided had defendants timely responded [because] plaintiff was already in default when the QWR was sent"); *Durland v. Fieldstone Mortgage Co.*, No. 10CV125, 2011 WL 805924 *3 (S.D. Cal. Mar. 1, 2011) (concluding that mere allegations of

The Third Amended Complaint also alleges that Defendants' "failure to respond properly, directly resulted in the home being demolished and Plaintiff suffer[ed] damages both emotional and actual including but not limited to fee(s) assessed to his account, overpayment, loss of property, and decreased value."[25]  This argument also fails.  Defendants' alleged failure to timely provide an accounting to Plaintiff would not have revealed that the property was in jeopardy of being demolished.  Plaintiff own admission support this finding.  He asserts that he received an accounting in October 2017, but the house was still demolished in March 2018.[26] The issues are unrelated.  Additionally, according to Plaintiff's complaint, he knew the property was in disrepair and subject to demolition for at least two years before it was torn down.  Again, it is the failure to make repairs that resulted in demolition, not Defendants' alleged failure to timely respond.  The same appears to be true for fees and penalties.  Fees and penalties are the result of defaulting on the loan in 2017 (based on the documents he provided), rather than Defendants' alleged untimely response.

Plaintiff also asserts that "[w]hile waiting on a full accounting of his account, on March 2, 2018, the Home and all of its contents were demolished at Wells Fargo's direction."[27]  Even if Defendants directed COLR to tear down the home (a claim they deny), the actions do not support a claim under RESPA.

---

fees assessed, negative credit reporting, and emotional distress were insufficient to establish a causal link between the alleged RESPA violations and Plaintiff's claimed damages).

[25]Doc. No. 37.

[26]See Doc. No. 37 at ¶¶ 30, 96.

[27]Doc. No. 65.

D.      **Arkansas Deceptive Trade Practice Act**

Plaintiff asserts that Defendant's void foreclosure sale was a violation of the Arkansas Deceptive Trade Practices Act.  For the same reasons mentioned above, Plaintiff's arguments in paragraphs 110-115 are without merit.  Plaintiff includes a hodgepodge of conclusory allegations in an effort to make a claim under the ADTPA.  He has not met his pleading burden.  To the extent that some claim might be parsed out of the allegations, I decline jurisdiction.

E.      **Motion for Leave to Amend**

Plaintiff asks to file a Fourth Amended Complaint, adding claims for negligence, breach of fiduciary duty, and trespass.  These are all state law claims.  The only federal cause of action – a RESPA violation – was dismissed.  Plaintiff's current complaint does not specify whether the damages he seeks exceed the statutory minimum.  Yet, this case involves alleged mortgage overpayment of around $14,000.  Defendants point out that Plaintiff's made a $225,000 settlement demand.  However, that was before many of the causes of action were dismissed.  After considering the allegations in the Third Amended Complaint, I find to a legal certainty that Plaintiff's claims could not satisfy the amount-in-controversy requirement. Without federal jurisdiction, there is no reason for Plaintiff to amend his case (for a fourth time) in this Court.

**CONCLUSION**

For the reasons set out above, Defendants' Motion to Dismiss (Doc. No. 69) is GRANTED.  This case is DISMISSED.  Plaintiff's Motion to File a Fourth Amended Complaint (Doc. No. 75) and request for a hearing (Doc. No. 75) and Defendant's Motion for Leave to File Reply (Doc. No. 77) are DENIED.

IT IS SO ORDERED this 17th day of December, 2020.

Billy Roy Wilson                                    
UNITED STATES DISTRICT JUDGE